# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

**JANE AAA DOE**

        **Plaintiff,**

**V**

**MICHIGAN STATE UNIVERSITY;
THE BOARD OF TRUSTEES OF
MICHIGAN STATE UNIVERSITY;
LAWRENCE GERARD NASSAR
(individual and official capacity), USA
GYMNASTICS, INC.; TWISTARS
USA, INC. d/b/a GEDDERT'S
TWISTARS GYMNASTICS CLUB
USA**

        **Defendants.**

Case No._____

Hon._____

**Complaint and Jury Demand**

A civil action between these parties or
other parties arising out of the transaction
or occurrence alleged in the Complaint
has been previously filed in this court,
where it was given docket number 1:17-
cv-00029 and was assigned to the
Honorable Judge Gordon Quist. That
action remains pending.

---

**James F. Graves (P14288)**
Sinas, Dramis, Brake,
Boughton & McIntyre, PC
Attorneys for Plaintiff
3380 Pine Tree Road
Lansing, MI 48911-4207
Ph.: (517) 394-7500
Fax: (517) 394-7510
E: jimgraves@sinasdramis.com

---

## COMPLAINT

    **NOW COMES** Plaintiff, Jane AAA Doe (hereinafter *"Plaintiff"*), by and through her

attorneys, Sinas, Dramis, Brake, Boughton & McIntyre, P.C., for her Complaint against the

above-named Defendants, Michigan State University (hereinafter *"Defendant MSU"*), the

Board of Trustees of Michigan State University (hereinafter collectively with Defendant MSU referred to as *"MSU Defendants"*), Lawrence Gerard Nassar, (hereinafter *"Defendant Nassar"*), United States of America Gymnastics, Inc. (hereinafter *"Defendant USAG"*), and Twistars USA, Inc., doing business as, Geddert's Twistars Gymnastics Club USA (hereinafter *"Defendant Twistars"*), states as follows:

### INTRODUCTORY STATEMENTS

1.     This is civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiff as a result of acts and omissions of Defendant Nassar, Defendant MSU, Defendant The Board of Trustees of Michigan State University, and Defendant USAG and their respective employees, agents, and/or representatives, relating to sexual assault, battery, molestation, harassment, and discrimination by Defendant Nassar against Plaintiff that occurred during Plaintiff's appointment with Defendant Nassar at the MSU Sports Medicine Clinic on March 24, 2014.

2.     At all times pertinent hereto, Defendant Nassar was retained by Defendant MSU and Defendant USAG to provide medical care, treatment, and advice to Michigan State University athletes and members of the general public. Defendant Nassar regularly provided such medical care, treatment, and advice at Defendant MSU's training department and/or MSU Sports Medicine Clinic.

3.     Defendant Nassar came highly recommended to Plaintiff as a renowned orthopedic sports medicine physician, purportedly well-respected in the sports medicine

2

community, specifically in the gymnastics community as the Team Physician for the United States Gymnastics team.

4.      Upon information and belief, Defendant Nassar regularly and systematically sexually assaulted, battered, molested, and harassed dozens of young females over the entire course of his career in his capacity as an employee, agent, and/or representative of Defendant MSU and Defendant USAG.

5.      Defendant Nassar used his position as a medical doctor at Defendant MSU and Defendant USAG to gain trust and confidence with the women he sexually assaulted, battered, molested, and harassed.

6.      The sexual assault, battery, molestation, and harassment alleged herein was done for Defendant Nassar's personal sexual gratification and directed specifically at young women.

7.      Defendant Nassar's sexual assault, battery, molestation, and harassment was conducted under the guise of providing medical care.

8.      Despite being informed of Defendant Nassar's sexual assault, battery, molestation, and harassment, Defendant MSU and Defendant USAG failed to take appropriate action to prevent Defendant Nassar from sexually molesting, abusing, and harassing his patients over the course of his career in his capacity as an employee, agent, and/or representative of Defendant MSU and Defendant USAG.

## JURISDICTION

9.      Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

10.     This action is brought pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. 1681 *et seq.*, as more fully set forth herein.

11.     This action also seeks to redress the deprivation of Plaintiff's rights secured by the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

12.     This Court has subject matter jurisdiction over this action pursuant to Title 28 U.S.C. § 1331 in that the controversy arises under the Constitution, laws, and treaties of the United States.

13.     Subject matter jurisdiction is also founded upon 28 U.S.C. § 1343 which grants district courts original jurisdiction over any civil action authorized by law to be commenced by any person to redress the deprivation, under color of any state Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; or any action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

14.     Subject matter jurisdiction is also founded upon 28 U.S.C. § 1332 as it relates to Plaintiff's claims against Defendant USAG for the reason that 28 U.S.C. § 1332 grants

4

subject matter jurisdiction over civil actions involving citizens of different states where the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

15. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

16. Plaintiff's claims are cognizable under the United States Constitution, 42 U.S.C. § 1983, 20 U.S.C. § 1681, *et seq.,* and under Michigan law.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims arose in this judicial district, in Ingham County, Michigan.

18. Because Michigan State University is a public university organized and existing under the laws of the State of Michigan, and Michigan statutory law requires parties to file a Notice of Intention to File Claim in order to maintain any action against the state. In satisfaction of M.C.L. § 600.6431, Plaintiff filed a Notice of Intent to File Claim with the Michigan Court of Claims on December 29, 2016.

## PARTIES

19. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

20.     Plaintiff's name has been withheld from this Complaint to protect her identity as her claims involve sexual assault, battery, molestation, harassment, and other conduct considered to be extremely personal and sensitive in nature.[1]

21.     Plaintiff is an adult female. Plaintiff is and was, at all times pertinent hereto, a resident of Michigan.

22.     Defendant Nassar was a Doctor of Osteopathic Medicine and is a resident of Ingham County, Michigan.

23.     Defendant Michigan State University is and was, at all times pertinent hereto, a state-owned and operated public university and institution of higher education organized and existing under laws of the State of Michigan.

24.     Michigan State University receives federal financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

25.     Defendant The Board of Trustees of Michigan State University is the governing body for Michigan State University.

26.     Defendant The Board of Trustees of Michigan State University and Defendant MSU are hereinafter collectively referred to as the *"MSU Defendants."*

27.     Lou Anna K. Simon is the current President of Defendant MSU, appointed in approximately January 2005. Prior to her appointment as President, Defendant Simon held several administrative roles including assistant provost for general academic

---

[1] Plaintiff will seek an Order of the Court regarding disclosure of Plaintiff's identity and the conditions for disclosure.

administration, associate provost, and provost and vice president for academic affairs during her career with MSU.

28.     M. Peter McPherson is the immediate past President of Defendant MSU and served as President from approximately 1993 - 2004.

29.     William D. Strampel, D.O. is the Dean of the College of Osteopathic Medicine at Defendant MSU, serving as Dean since approximately April 2002 and as Acting Dean between December 2001 and April 2002.

30.     Jeffrey R. Kovan, D.O. is or was the Director of Division of Sports Medicine at Defendant MSU.

31.     Kathie Klages was the head coach of the Michigan State University Gymnastics Program until her suspension and resignation on February 14, 2017; she also conducted gymnastics classes and programs for children and young adults not on the varsity gymnastics team.

32.     Kristine M. Moore served as the Assistant Director for Institutional Equity Office for Inclusion and Intercultural Initiatives in 2014. Following the incident that is the subject of this civil action, Kristine M. Moore began serving as, and remains at this time, Assistant General Counsel at Michigan State University.

33.     Defendant USAG was and continues to be an organization incorporated in Indiana, authorized to conduct business and conducting business throughout the United States including, but not limited to, the State of Michigan.

7

34.     Steve Penny is the current president of Defendant USAG, named in approximately April 2005, who is currently responsible for the overall management and strategic planning of Defendant USAG.

35.     Robert Colarossi is the past president of Defendant USAG and held the position from approximately 1998 to 2005 and during that time was responsible for the overall management and strategic planning of Defendant USAG.

## GENERAL ALLEGATIONS

36.     Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

37.     At all times pertinent hereto, Defendant Nassar maintained an office at Defendant MSU in East Lansing, Michigan.

38.     At all times pertinent hereto, including the years 1996 to 2016, Defendant Nassar was an employee, representative, and/or agent of Defendant MSU acting under their control and supervision.

39.     At all times pertinent hereto, including the years 1996 to 2015, Defendant Nassar was an employee, representative, and/or agent of Defendant USAG acting under their control and supervision.

40.     At all times pertinent hereto, including the years 1996 to 2016, Defendant Nassar was acting in the scope of his employment or agency with Defendant MSU.

41.     At all times pertinent hereto, including the years 1996 to 2015, Defendant Nassar was acting in the scope of his employment or agency with Defendant USAG.

8

42.     At all relevant times, Defendant MSU and Defendant Nassar were acting under color of law, including acting under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant MSU.

43.     Defendant Nassar graduated with a Doctor of Osteopathic Medicine degree from Defendant MSU in 1993.

44.     Defendant Nassar was employed by, and/or an agent of, Defendant USAG from approximately 1986 to 2015, serving in various positions, including, but not limited to: (a) Certified Athletic Trainer; (b) Osteopathic Physician; (c) National Medical Doctor; (d) National Team Physician for USA Gymnastics; and (e) National Team Physician for USA Gymnastics' Women's Artistic Gymnastics National Team.

45.     Defendant Nassar was employed by, and/or an agent of, Defendant MSU from approximately 1996 to 2016, serving in various positions, including, but not limited to: (a) Associate Professor of Defendant MSU's Division of Sports Medicine, Department of Radiology, College of Osteopathic Medicine; (b) Team Physician of Defendant MSU's Men's and Women's Gymnastics Teams; (c) Team Physician of Defendant MSU's Men's and Women's Track and Field Teams; (d) Team Physician of Defendant MSU's Men's and Women's Crew Teams; (e) Team Physician of Defendant MSU's Intercollegiate Athletics; (f) Medical Consultant with Defendant MSU's Wharton Center for the Performing Arts; and (g) Advisor for Student Osteopathic Association of Sports Medicine.

46.     Defendant Nassar practiced osteopathic medicine at MSU Sports Medicine Clinic, a facility owned and operated by Defendant MSU, during his employment with Defendant MSU and Defendant USAG.

47.     As a physician of osteopathic medicine, Defendant Nassar's medical care and treatment should have consisted largely of osteopathic adjustments and kinesiology treatment to patients, including students and student athletes of Defendant MSU.

48.     Defendant Nassar is not and has never been a medical doctor of obstetrics or gynecology.

49.     While employed by Defendant MSU and Defendant USAG, Defendant Nassar sexually assaulted, abused, and molested numerous female patients by engaging in nonconsensual sexual assault, battery, molestation, and harassment, including, but not limited to, digital vaginal and anal penetration without the use of gloves or lubricant.

50.     The use of gloves when exposed to potentially infectious material, including vaginal secretion, is mandated by the State of Michigan's Department of Licensing and Regulatory Affairs Occupational Health Standards regarding Bloodborne Infectious Diseases.[2]

---

[2]*See Michigan Administrative Code R. 325.70001 et seq.*, DEP'T OF LICENSING & REGULATORY AFFAIRS, *available at*
http://www.michigan.gov/documents/CIS_WSH_part554_35632_7.pdf (last visited Mar. 20, 2017).

51.     Defendant Nassar used his position of trust and confidence in an abusive manner to sexually assault, batter, molest, and harass female patients, including Plaintiff, over the course of his career for his own sexual self-gratification.

52.     As early as 1997 and/or 1998, employees, representatives, and agents of Defendant MSU were made aware of Defendant Nassar's conduct, yet failed to appropriately respond to allegations, resulting in the sexual assault, battery, molestation, and harassment of Plaintiff and other female patients through approximately 2016.

53.     Specifically, upon information and belief, Defendant MSU and Kathie Klages were expressly notified by a minor female athlete (hereinafter "Jane BMSU Doe") in 1997 and/or 1998, while under the instruction of Kathie Klages and MSU Youth Gymnastics, that Defendant Nassar sexual assaulted, battered, molested, and harassed Jane BMSU Doe on multiple occasions.[3]

54.     Upon information and belief, after receiving Jane BMSU Doe's complaint, Katie Klages told Jane BMSU Doe that she must be "misunderstanding" or "reading into" what Defendant Nassar was doing. Kathie Klages convinced Jane BMSU Doe not to file a formal complaint by explaining that it would have serious consequences for Jane BMSU Doe and Defendant Nassar.[4]

---

[3] Complaint at 10, ¶ 70-71, *Denhollander et al. v. Mich. State Univ. et al.*, Case No. 1:17-cv-00029-GJQ-ESC, ECF No. 17, PageID.645 (W.D. Mich. Jan. 1, 2017).

[4] *Id.*

55.    Despite her complaints to Defendant MSU employees, agents, and/or representatives, including Kathie Klages, Jane BMSU Doe's concerns and allegations went unaddressed.

56.    As a result of Kathie Klages being informed about Defendant Nassar's conduct, at least one other athlete was asked by Kathie Klages if Defendant Nassar had performed the "procedure" involving digital vaginal and anal penetration on her (the athlete), and the athlete responded in the affirmative. Kathie Klages told the athlete that there is no reason to bring up Defendant Nassar's conduct.

57.    Upon information and belief, Defendant MSU was notified again in 1999 that Defendant Nassar committed acts of sexual assault, battery, molestation and harassment when a student athlete (hereinafter "*Jane X. Doe*") reported to Defendant MSU employees, agents, and/or representatives, including  trainers and a head coach, that Defendant Nassar touched her vaginal area, although she was seeking treatment for an injured hamstring.[5]

58.    Despite her complaints to Defendant MSU's employees, agents, and/or representatives, including trainers and head coaches, Jane X. Doe's concerns and allegations went unaddressed.

59.    Upon information and belief, Defendant MSU was notified again in 2000 that Defendant Nassar committed acts of sexual assault, battery, molestation, and harassment when a student athlete, Tiffany Thomas Lopez, reported to MSU employees, agents,

---

[5]*Id.* at 15, ¶ 109.

and/or representatives, including the highest ranking employees within MSU's Training Staff, that Defendant Nassar touched her vaginal area on multiple occasions and inserted his ungloved hand into her vagina, although she was seeking treatment for back pain.[6]

60.    Upon information and belief, an employee, agent, and/or representative of Defendant MSU, who was one of three individuals that supervised the training department, told Tiffany Thomas Lopez that what happened to her was not sexual abuse, that Defendant Nassar was a world renowned doctor, that she was not to discuss what happened, and that she was to continue seeing Defendant Nassar for purported treatment.[7]

61.    Despite her complaints to Defendant MSU employees, agents, and/or representatives, including the highest ranking employees within MSU's Training Staff, Tiffany Thomas Lopez's concerns and allegations went unaddressed.

62.    The employees, agents, and/or representatives of Defendant MSU, including MSU trainers, coaches, and Katie Klages, had a duty to report allegations of Defendant Nassar's inappropriate sexual conduct directed at Jane BMSU Doe, Jane X. Doe, and Tiffany Thomas Lopez.

63.    The employees, agents, and/or representatives of Defendant MSU, including MSU trainers, coaches, and Katie Klages, violated reporting policies and procedures and Title IX and in a manner that was reckless, deliberately indifferent, and grossly negligent.

---

[6] Complaint at 9-10, ¶ 26, *Lopez v. Nassar, et al.*, Case No. BC644417 (Cal. Sup. Ct. Dec. 21, 2016).
[7] *Id.*

64.     Because MSU took no action to investigate the 1997 and/or 1998, 1999, and 2000 complaints and took no corrective action, from 2000 to 2016, under the guise of treatment, several individuals, including Plaintiff, were sexually assaulted, abused, molested, and harassed by Defendant Nassar by vaginal and anal digital penetration, without the use of gloves or lubricant and by touching and groping their breasts.

65.     On or about March 24, 2014, during Defendant Nassar's employment, agency, and/or representation with Defendant MSU and Defendant USAG, Defendant Nassar sexually assaulted, battered, molested, and harassed Plaintiff by touching her breasts and genital area with his ungloved hand, without Plaintiff's consent.

66.     The MSU Defendants, and its employees, agents, and/or representatives, through planned artifice, attempted to prevent inquiry or escape investigation regarding the tortious acts of Defendant Nassar by hindering the acquirement of information and expressly misleading Plaintiff, and other individuals, as described more fully herein this Complaint.

## SPECIFIC ALLEGATIONS

67.     Plaintiff was an undergraduate student at Michigan State University from 2007 to 2012.

68.     In 2012, Plaintiff graduated from Michigan State University, earing a Bachelor of Arts in Studio Art degree.

69.     On February 17, 2014, Plaintiff was accepted to, and became enrolled in, a post-baccalaureate Lifelong Education program at Michigan State University.

14

70.     On May 12, 2014, Plaintiff began her Lifelong Education program at Michigan State University.

71.     Between the time Plaintiff graduated in 2012, and began her Lifelong Education program in 2014, Plaintiff remained dedicated and committed to continuing her education at Michigan State University.

72.     Plaintiff was suffering from hip pain on or about March 24, 2014.

73.     On March 24, 2014, Plaintiff attended an appointment with Defendant Nassar at MSU Sports Medicine Clinic for treatment of her hip pain, which appointment lasted approximately ninety minutes.

74.     Within a short time, Defendant Nassar made Plaintiff feel uncomfortable by acting "goofy" and being "too touchy."

75.     During the course of Plaintiff's appointment, Defendant Nassar engaged in several acts of disturbing and inappropriate sexual conduct, including, but not limited to:

    A.     While a resident physician was still in the room, Defendant Nassar "cupped" Plaintiff's buttocks over her sweatpants;

    B.     Defendant Nassar told Plaintiff that her boyfriend should give her better massages;

    C.     Defendant Nassar instructed the resident doctor, who was the only other person present during the appointment, to leave the room;

15

D.  Defendant Nassar began to massage Plaintiff's breast under her shirt from the front, and continued for 30-45 seconds, despite Plaintiff saying that it was not helping her pain in any manner;

E.  Defendant Nassar applied lotion to his ungloved hands and began massaging Plaintiff's vaginal area with three fingers, under her underwear, in a circular motion for approximately ninety seconds;

F.  Defendant Nassar continued massaging Plaintiff's vaginal area in the manner described above, despite Plaintiff expressly telling him to stop;

G.  Defendant Nassar did not stop touching Plaintiff until she physically removed his hands from her body;

H.  Defendant Nassar became sexually aroused while touching Plaintiff;

I.  Defendant Nassar massaged Plaintiff's breasts and vaginal area in the manner described above without warning;

J.  Defendant Nassar massaged Plaintiff's breasts and vaginal area in the manner described above without providing Plaintiff a clear description of his reasoning for performing such acts;

K.  Defendant Nassar massaged Plaintiff's breasts and vaginal area in the manner described above without obtaining Plaintiff's consent;

L.  Defendant Nassar was extremely persistent with personally setting up a second appointment with Plaintiff, asking her to commit despite her

16

telling him "no" to approximately five different proposed dates and times;

M.  In regards to Plaintiff's second appointment, Defendant Nassar told Plaintiff "if you are on your period next time, we can work around that, so don't worry."

76.  Plaintiff reported Defendant Nassar's conduct to Dr. Jeffrey R. Kovan, D.O., on April 18, 2014.

77.  Plaintiff met with Dr. Kovan on April 21, 2014, to discuss her complaints and the details of her appointment with Defendant Nassar.

78.  On April 21, 2014, following Dr. Kovan's meeting with Plaintiff, Dr. Kovan reported Defendant Nassar's conduct to Defendant MSU's Office for Inclusion and Intercultural Activities.

79.  MSU's Office for Inclusion and Intercultural Activities investigated Plaintiff's complaints regarding her appointment with Defendant Nassar. The investigation was conducted by Kristine M. Moore.

80.  During an investigation interview, Plaintiff informed Kristine M. Moore that she believed the manner in which Defendant Nassar was touching her breasts was intimate, "like your boyfriend would while you were making out."

81.  Plaintiff further reported to Kristine M. Moore that she was "shocked" when Defendant Nassar began massaging her vaginal area and, at the time, could not process in her mind what was happening.

17

82.     Plaintiff also reported to Kristine M. Moore that Defendant Nassar was "extremely close to inserting a finger into her vaginal opening."

83.     As part of Kristine M. Moore's investigation, Plaintiff's friends and family were interviewed, as well as local medical professionals.

84.     Following Kristine M. Moore's completion of the investigation, Plaintiff's complaints were dismissed and Defendant MSU, by and through the Office for Inclusion and Intercultural Initiatives, determined that Plaintiff did not understand the "nuanced difference" between sexual assault and appropriate medical procedure and deemed Defendant Nassar's conduct "was [not] of a sexual nature."

85.     Kristine M. Moore's Report on Investigation into Allegations of Sexual Harassment omitted and withheld facts that Plaintiff reported, including, but not limited to:

    A.     Defendant Nassar became sexually aroused while touching Plaintiff.

    B.     Defendant Nassar did not stop touching Plaintiff until she physically removed his hands from her body.

86.     Following the investigation, Defendant Nassar became subject to new institutional guidelines from Defendant MSU, which required protocols to be followed when providing treatment in sensitive patient areas and included:

    A.     Another person (resident, nurse, etc.) will be in the room;

    B.     The procedure will be modified to be sure there is little to no skin contact; and

18

C.     The procedure will be explained in detail with another person in the room for both the explanation and procedure.[8]

87.     After receiving allegations of "athlete concerns," in approximately summer 2015, Defendant USAG relieved Defendant Nassar of his duties.

88.     Defendant Nassar ignored or otherwise refused to comply with these guidelines and continued to treat patients alone, and Defendant MSU did not take appropriate measures to ensure that these institutional guidelines were enforced and adhered to.

89.     Defendant MSU's deliberate indifference before, during, and after the sexual assault, battery, molestation, and harassment of Plaintiff was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, 42 U.S.C. § 1983, as well as other Federal and State laws.

90.     Defendant MSU's failure to properly supervise Defendant Nassar and their negligence in retaining Defendant Nassar is in violation of Michigan common law.

91.     In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13, and was later released on a $1 million bond.[9]

---

[8] See email correspondence between William Strampel and Defendant Nassar dated July 30, 2014 expressly stating the guidelines and protocols for Defendant Nassar's treatments. (*See* **Exhibit 1**.)

[9] State of Michigan., Ingham County Circuit Court Case No. 1603031.

19

92.     In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in the United States District Court for the Western District of Michigan in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.[10]

93.     According to the federal indictment,[11] Defendant Nassar:

    a.     Knowingly received and attempted to receive child pornography between approximately September 18, 2004 and December 1, 2004;

    b.     Knowingly possessed thousands of images of child pornography between approximately February 6, 2003 and September 20, 2016 including images involving a minor who was under the age of 12.

94.     On February 17, 2017, at a preliminary examination, Defendant Nassar was ordered to stand trial on three charges of first-degree criminal sexual conduct with a person under 13 in Ingham County following testimony, which included, among other, allegations of digital vaginal penetration at Defendant Nassar's residence.

95.     On February 22, 2017, Defendant Nassar was arraigned on 22 counts of first-degree criminal sexual conduct with a person under 13 years old, and 14 counts of third-

---

[10] *See United States of America v. Lawrence Gerard Nassar*, Case No. 1:16-cr-00242-JTN, ECF No. 1, PageID.1. (W.D. Mich. Dec. 14, 2016).

[11] 1:16-cr-00242 PageID.1-4.

degree criminal sexual conduct with a person under 13 years old in Ingham County, Michigan[12] and Eaton County, Michigan[13].

96.    Upon information and belief, Defendant Nassar is in custody pending the child pornography criminal charges.

97.    Plaintiff was not made aware of Defendant Nassar's widespread sexual abuse until media began covering the story in the fall of 2016.

98.    The acts, conduct, and omissions of the MSU Defendants, and their policies, customs, and practices with respect to investigating sexual assault allegations severely compromised the safety and health of Plaintiff and an unknown number of individuals, and have resulted the sexual assault, battery, molestation, and harassment of Plaintiff by Defendant Nassar, which has been devastating for Plaintiff and her family.

99.    This action arises from Defendants' blatant disregard for Plaintiff's federal and state rights, and Defendants' deliberately indifferent and unreasonable response to physician-on-patient/physician-on-student/physician-on-athlete sexual assault, battery, molestation, and harassment.

## COUNT I
## VIOLATION OF TITLE IX OF THE EDUCATION ACT OF 1972, 20 U.S.C. § 1681 *et seq* (Against MSU Defendants)

100.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

---

[12] *State v. Nassar*, Ingham County District Court Case No. 17-00425.

[13] *State v. Nassar*, Eaton County District Court Case No. 17-0318.

101.    Title IX, 20 U.S.C. § 1681(a) provides in pertinent part:

"*No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . ."*

102.    "Title IX also protects third parties from sexual harassment or violence in a school's education programs and activities."[14]

103.    Under Title IX, sexual harassment is any type of unwelcome conduct of a sexual nature. "It includes unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature."[15]

104.    Plaintiff is a "person" within the meaning of 20 U.S.C. §1681(a).

105.    Defendant MSU receives financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. § 1681, *et seq.*

106.    The U.S. Department of Education's Office of Civil Rights has explained that Title IX covers all programs of a school, and extends to sexual harassment and assault by employees, students, and third parties.

---

[14] U.S. Dep't. Educ. Office of Civil Rights, *Dear Colleague Letter: Sexual Violence,* at 4 n. 11, Apr. 2, 2011, https://www2.ed.gov/print/about/offices/list/ocr/letters/colleague-201104.html (last visited Mar. 20, 2017).

[15] *Id.* at 3.

107.    Defendant Nassar's actions and conduct were carried out under one of Defendant MSU's programs, which provides medical treatment and medical care to students, including student athletes, and members of the general public.

108.    Defendant Nassar's sexual assault, battery, molestation, and harassment of Plaintiff, including the massaging of her breasts and vaginal area despite her requests to stop, constitutes sexual discrimination and harassment under Title IX.

109.    Defendant Nassar's sexual assault, battery, molestation, and harassment of Jane BMSU Doe, Jane X. Doe, and Tiffany Thomas Lopez constituted sexual discrimination and harassment under Title IX.

110.    Pursuant to Title IX, Defendant MSU is obligated and required to investigate all allegations of sexual assault, battery, molestation, and harassment, including allegations that sexual assault, battery, molestation, and harassment has been committed by an employee, student, or third party.

111.    Defendant MSU owed Plaintiff duties under Title IX, which duties included not to engage in and be deliberately indifferent to known sexual assault, battery, molestation, harassment, and other sexual misconduct.

112.    Upon information and belief, an "appropriate person" at MSU, within the meaning of Title IX, and including but not limited to trainers, coaches, and Kathie Klages, had actual and constructive notice of sexual assault, battery, molestation, and harassment committed by Defendant Nassar in 1997 and/or 1998, again in 1999, and again in 2000.

113.    Defendant MSU failed to carry out its duties under Title IX to investigate and take corrective action in response to Jane BMSU Doe's complaints in 1997 and/or 1998.

114.    Defendant MSU failed to carry out its duties under Title IX to investigate and take corrective action in response to Jane X. Doe's complaints in 1999.

115.    Defendant MSU failed to carry out its duties under Title IX to investigate and take corrective action in response to Tiffany Thomas Lopez's complaints in 2000.

116.    Despite the complaints and concerns Jane BMSU Doe, Jane X. Doe, and Tiffany Thomas Lopez conveyed to Defendant MSU employees, agents, and/or representatives, including MSU trainers, coaches, and Katie Klages, their allegations went unaddressed, which violated reporting policies and procedures and Title IX and was done in a manner that was reckless, grossly negligent, and deliberately indifferent.

117.    The MSU Defendants acted with indifference and in a clearly unreasonable manner by failing to respond to the allegations of sexual assault, abuse, and molestation in light of the known circumstances, Defendant Nassar's conduct toward female athletes, and his access to young girls and young women.

118.    The MSU Defendants' deliberate indifference is further confirmed by the Department of Education's investigation into MSU's handling of sexual assault and relationship violence allegations, which revealed:

A.    That the MSU Defendants' failure to adequately respond to allegations of sexual assault created a sexually hostile environment and affected numerous students and staff on MSU's campus;

24

B.      That the MSU Defendants' failure to address complaints of sexual

violence in a prompt and equitable manner caused and may have

contributed..to a continuation of the sexually hostile environment.[16]

119.    The MSU Defendants' responses were clearly unreasonable as Defendant

Nassar continued to sexually assault female athletes and other individuals until he was

discharged from the University in 2016.

120.    MSU Defendants had actual and constructive knowledge of, but were

recklessly and deliberately indifferent to, Defendant Nassar's sexual assault, battery,

molestation, and harassment in between 1997 and/or 1998 and 2016.

121.    Defendant MSU's failure to investigate and take corrective actions to

complaints of Defendant Nassar's sexual assault, battery, molestation, and harassment in

1997 and/or 1998, 1999, and 2000 led to others, including Plaintiff, being sexually assaulted,

battered, molested, and harassed by Defendant Nassar.

122.    The report regarding Defendant MSU's investigation of Plaintiff's sexual

assault, battery, molestation, and harassment by Defendant Nassar omitted certain key

facts that were reported by Plaintiff, such as the fact that Defendant Nassar was sexually

aroused while touching her and that Plaintiff had to physically remove Defendant Nassar's

hands from her body.

---

[16] *Letter from U.S. Department of Education*, Office for Civil Rights to Michigan State
University, OCR Docket #15-11-2098, #15-14-2113 (Sept. 1, 2015),
https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf.

123. The MSU Defendants failed to adequately investigate and address Plaintiff's allegations as required by Title IX.

124. Defendant MSU's deliberate indifference before, during, and after the sexual assault, battery, molestation, and harassment of Plaintiff was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

125. Defendant MSU's failure to properly and appropriately investigate and take corrective action for the 1997 and/or 1998, 1999, and 2000 complaints of Defendant Nassar's sexual assault, battery, molestation, and harassment resulted in Plaintiff being subject to further sexual assault, battery, molestation, harassment, and a sexually hostile environment, effectively denying her access to educational opportunities at MSU, including her Lifelong Education program and medical care.

126. Defendant MSU's responses to the complaints in 1997 and/or 1998, 1999, and 2000, as well as Plaintiff's complaints in 2014, were clearly unreasonable as Defendant Nassar continued to sexually assault young females until he was discharged from the University in 2016.

127. The MSU Defendants failed to offer counseling services to current or former patients of Defendant Nassar, including Plaintiff.

128. The MSU Defendants' failure to promptly and appropriately investigate and remedy and respond to the sexual assaults after they received notice subjected Plaintiff to further harassment and a sexually hostile environment, effectively denying her access to educational opportunities at MSU, including medical care.

26

129. As a direct and proximate result of the MSU Defendants' actions and inactions, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

### COUNT II
### VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983
### (Against the MSU Defendants and Defendant Nassar)

130. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

131. Plaintiff, as a female, is a member of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States.

132. Plaintiff enjoys the constitutionally protected Due Process right to be free from the invasion of bodily integrity through sexual assault, battery, molestation, and harassment.

133. At all relevant times, the MSU Defendants and Defendant Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

134.    The acts as alleged above amount to a violation of these clearly established constitutionally protected rights, of which reasonable persons in the MSU Defendants' position should have known.

135.    The MSU Defendants have the ultimate responsibility and authority to train and supervise their employees, agents, and representatives, in the appropriate manner of detecting, reporting, and preventing sexual abuse, assault, and molestation and as a matter of acts, custom, policy, and/or practice failed to do so with deliberate indifference.

136.    As a matter of custom, policy,  and/or practice, the MSU Defendants have the ultimate responsibility and authority to investigate complaints against their employees, agents, and representatives from all individuals including, but not limited to, students, visitors, faculty, staff, or other employees, agents, and representatives, and failed to do so with deliberate indifference.

137.    The MSU Defendants had a duty to prevent sexual assault, abuse, and molestation on their campus and premises, that duty arising under the above-referenced constitutional rights, as well as established rights pursuant to Title IX.

138.    Defendant MSU's internal policies provide that "[a]ll University employees . . . are expected to promptly report sexual misconduct or relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred at a University event or on University property." They further

28

provide that "[t]he employee must report all relevant details about the alleged relationship violence or sexual misconduct that occurred on campus or at a campus-sponsored event."[17]

139. This policy was violated in or around 1997 and/or 1998 when Jane BMSU Doe reported sexual assault, abuse, and molestation by Defendant Nassar to the MSU Defendants' employees, agents, and/or representatives, including Kathie Klages, and no action was taken to address her complaints.

140. This policy was violated again in or around 1999 when Jane X. Doe reported sexual assault, abuse, and molestation by Defendant Nassar to the MSU Defendants' employees, agents, and/or representatives, including trainers and a coach, and no action was taken to address her complaints.

141. This policy was violated again in 2000 when Tiffany Thomas Lopez reported sexual assault, abuse, and molestation by Defendant Nassar to the MSU Defendants' employees, agents, and/or representatives, including the highest ranking employees within MSU Training Staff, and no action was taken to address her complaints.

142. The MSU Defendants' failure to address the 1997 and/or 1998, 1999 and 2000 complaints led to an unknown number of individuals being victimized, sexually assaulted, abused, and molested by Defendant Nassar.

---

[17] Michigan State University, *University Policy on Relationship Violence & Sexual Misconduct*, MSU STUDENT RES., at 19-20,
https://www.hr.msu.edu/documents/uwidepolproc/RVSMPolicy.pdf (last visited Mar. 20, 2017).

143. Additionally, Defendant MSU's failure to properly address Plaintiff's 2014 complaint regarding Defendant Nassar's conduct also led to others being victimized, sexually assaulted, abused and molested by Defendant Nassar.

144. Ultimately, the MSU Defendants failed to adequately and properly investigate complaints including, but not limited to, failing to:

> A. Perform a thorough investigation into improper conduct by Defendant Nassar after receiving complaints in 1997 and/or 1998, 1999 and 2000;
>
> B. Thoroughly review and investigate all policies, practices, procedures and training materials related to the circumstances surrounding the conduct of Defendant Nassar;
>
> C. Recognize sexual assault when reported by Plaintiff in 2014 and permitting University officials to deem sexual assault as "medically appropriate" and "not of a sexual nature;" and
>
> D. Ensure all institutional guidelines issued following the 2014 investigation into Defendant Nassar's conduct were satisfied.

145. As indicated in a U.S. Department of Education Office of Civil Rights report,[18] the MSU Defendants allowed a sexually hostile environment to exist, affecting numerous individuals on Defendant MSU's campus, including Plaintiff.

---

[18] See *Letter from U.S. Department of Education*, Office for Civil Rights to Michigan State University, OCR Docket #15-11-2098, #15-14-2113 (Sept. 1, 2015), https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf.

146. As also discussed in the report, Defendant MSU's custom, practice, and/or policy of failing to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which caused and may have contributed to a continuation of the sexually hostile environment.

147. By failing to prevent the aforementioned sexual assault, abuse, and molestation upon Plaintiff, and by failing to appropriately respond to reports of Defendant Nassar's sexual assault, abuse, and molestation in a manner that was so clearly unreasonable it amounted to deliberate indifference, the MSU Defendants are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

148. The MSU Defendants are also liable to Plaintiff under 42 U.S.C. § 1983 for maintaining customs, policies, practices which deprived Plaintiff of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

149. The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline Defendant Nassar, with the result that Defendant Nassar continued to violate the rights of persons such as Plaintiff with impunity.

150. The MSU Defendants failed to warn or advise current and former patients of Defendant Nassar, including Plaintiff, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

151.    The MSU Defendants failed to offer counseling services to current of former patients of Defendant Nassar, including Plaintiff.

152.    As a direct and proximate result of the MSU Defendants' and Defendant Nassar's actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

## COUNT III
### FAILURE TO TRAIN AND SUPERVISE, 42 U.S.C. § 1983
### (Against the MSU Defendants)

153.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

154.    The MSU Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives, including Defendant Nassar and all faculty and staff, regarding their duties toward students, faculty, staff, and visitors.

155.    The MSU Defendants failed to train and supervise its employees, agents, and/or representatives, including all faculty and staff, regarding the following duties:

A.    Perceive, report, and stop inappropriate sexual conduct on campus;

B.    Provide diligent supervision over student-athletes and other individuals;

32

C.      Report suspected incidents of sexual abuse or sexual assault;

D.      Ensure the safety of all students, faculty, staff, and visitors to Defendant MSU's campuses premises;

E.      Provide a safe environment for all students, faculty, staff, and visitors to Defendant MSU's premises free from sexual harassment; and,

F.      Properly train faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment.

156.    The above list of duties is not exhaustive.

157.    The MSU Defendants and their employees, agents, and/or representatives had a duty to report suspected sexual abuse.

158.    The MSU Defendants and their employees, agents, and/or representatives failed to report sexual abuse about which they knew or should have known.

159.    The MSU Defendants failed to adequately train coaches, trainers, medical staff, and others regarding the aforementioned duties which led to violations of Plaintiff's rights.

160.    As a result, the MSU Defendants deprived Plaintiff of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

161.    The MSU Defendants failed to warn or advise current and former patients of Defendant Nassar, including Plaintiff, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

33

162.    The MSU Defendants failed to offer counseling services to current of former patients of Defendant Nassar, including Plaintiff.

163.    As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

### COUNT IV
### VIOLATION OF ELLIOT-LARSON CIVIL RIGHTS ACT, MCL 37.2101
### (Against MSU Defendants)

164.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

165.    The Elliot-Larsen Civil Rights Act ("Elliot-Larsen") prohibits discrimination based on sex. MCL 37.2102.

166.    "Discrimination because of sex includes sexual harassment." MCL 37.2.103(i).

167.    "Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature." MCL 37.2103(i).

168.    Elliot-Larsen protects against sexual harassment in educational institutions.

169.    MSU is an educational institution pursuant to MCL 37.2401.

34

170.    An educational institution shall not "discriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of . . . sex." MCL 37.2401(a) (emphasis added).

171.    Elliot-Larsen also protects against sexual harassment in places of public accommodation. MCL 37.2302. Under this section, an individual shall not be denied "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of . . . sex." MCL 37.2302(a).

172.    MSU is a "place of public accommodation" because its "services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." MCL 37.2301(a).

173.    Plaintiff is a "person" within the meaning of MCL 37.2103(g).

174.    Nassar's actions and conduct were carried out under one of MSU's programs, which provides medical treatment to students, athletes, and the general public, wherein MSU, through MSU Sport Medicine Clinic, solicits and markets to people like Plaintiff, and places Plaintiff within the University community.

175.    Nassar's actions and conduct toward Plaintiff denied her the full and equal enjoyment of MSU's services at a place of public accommodation, in violation of Elliot-Larson.

176.    Nassar's actions and conduct toward Plaintiff of nonconsensual sexual assault, battery, and molestation, and harassment, which includes unconsented touching

35

and rubbing of Plaintiff's genitalia and breasts, constitutes sex discrimination under Elliot-Larsen.

177. As a direct and proximate result of the MSU Defendants' actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

**COUNT V**
**GROSS NEGLIGENCE**
**(Against the MSU Defendants and Defendant Nassar)**

178. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

179. The MSU Defendants owed Plaintiff a duty of ordinary care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Nassar.

180. Defendant Nassar owed Plaintiff a duty to use ordinary care in providing medical treatment as an employee, agent, and/or representative of the MSU Defendants.

181. A special, confidential, and fiduciary relationship was created between Plaintiff and Defendant Nassar when Plaintiff sought medical treatment from Defendant

Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, resulting in Defendant Nassar owing Plaintiff a duty to use due care.

182. The MSU Defendants and their employees, agents, and/or representatives had a duty to report suspected sexual abuse.

183. The MSU Defendants and their employees, agents, and/or representatives failed to report sexual abuse about which they knew or should have known.

184. The MSU Defendants' failure to adequately supervise Defendant Nassar, especially after the MSU Defendants knew or should have known of complaint regarding Defendant Nassar's conduct, was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted to Plaintiff.

185. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants under the guise of proper medical treatment was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted to Plaintiff.

186. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants and under the guise of rendering "medical treatment" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

187. The MSU Defendants' conduct and the conduct of their individual employees and agents demonstrated a willful disregard for precautions to ensure Plaintiff's safety.

188.    The MSU Defendants knew or should have known of complaints pertaining to Defendant Nassar's nonconsensual sexual touching and assaults that occurred under the guise of medical treatment.

189.    The MSU Defendants' conduct demonstrated a willful disregard for precautions to ensure Plaintiff's safety.

190.    The MSU Defendants' conduct demonstrated a willful disregard for substantial risks to Plaintiff.

191.    The MSU Defendants breached duties owed to Plaintiff and were grossly negligent when they conducted themselves in the manner described above. These acts by the MSU Defendants were committed with reckless disregard to Plaintiff's safety, health, constitutional and/or statutory rights, and with substantial lack of concern to whether an injury resulted to Plaintiff.

192.    The MSU Defendants failed to warn or advise current and former patients of Defendant Nassar, including Plaintiff, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

193.    The MSU Defendants failed to offer counseling services to current of former patients of Defendant Nassar, including Plaintiff.

194.    As a direct and proximate result of the MSU Defendants' and Defendant Nassar's actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of

emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

COUNT VI
NEGLIGENCE
**(Against the MSU Defendants and Defendant Nassar)**

195. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

196. The MSU Defendants owed Plaintiff a duty to use ordinary care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Nassar.

197. A special, confidential, and fiduciary relationship was created between Plaintiff and Defendant Nassar when Plaintiff sought medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care.

198. Defendant Nassar owed Plaintiff a duty to use ordinary care in his undertakings.

199. The MSU Defendants and their employees, agents, and/or representatives had a duty to report suspected sexual abuse.

200. The MSU Defendants and their employees, agents, and/or representatives failed to report sexual abuse about which they knew or should have known.

39

201.    The MSU Defendants' failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

202.    The MSU Defendants had notice of complaints of a sexual nature related to Defendant Nassar's purported treatment with young girls and women through Defendant MSU employees, agents, and/or representatives as early as 1997 and/or 1998, again in 1999, again in 2000, and again in 2014.

203.    The MSU Defendants knew or should have known of the foreseeability of sexual abuse with respect to youth and collegiate sports.

204.    The MSU Defendants' failure to properly address, investigate, and remedy complaints against Defendant Nassar's conduct was a breach of the duty to use ordinary care.

205.    Defendant Nassar's conduct in sexually assaulting, battering, molesting, and harassing Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants under the guise of proper medical treatment was a breach of the duty to use ordinary care.

206.    The MSU Defendants failed to warn or advise current and former patients of Defendant Nassar, including Plaintiff, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

207.    The MSU Defendants failed to offer counseling services to current of former patients of Defendant Nassar, including Plaintiff.

208.    As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

**COUNT VII**
**VICARIOUS LIABILITY**
**(Against the MSU Defendants)**

209.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

210.    Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.[19]

211.    Vicarious liability essentially creates agency between the principal and its agent so that the principal is held to have done what the agent has done.

212.    The MSU Defendants employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1996 to 2016.

---

[19]*See generally Gallagher v. C.H. Robinson Worldwide, Inc.,* 567 F.3d 263   (6th Cir. 2009).

213.    Defendant MSU's website contains hundreds of web pages portraying Defendant Nassar as a distinguished member of Defendant MSU's College of Osteopathic Medicine, Division of Sports Medicine.[20]

214.    The MSU Defendants are vicariously liable for the actions of Defendant Nassar, as described above, that were performed during the course of his employment, agency, and/or representation with the MSU Defendants and while he had access to young female athletes on Defendant MSU's campus and premises through its College of Osteopathic Medicine and Division of Sports Medicine.

215.    The MSU Defendants had actual and/or constructive knowledge of Defendant Nassar sexually assaulting, battering, molesting, and harassing young females on several occasions [under the guise of medical treatment]  [during the course of his employment, agency, and/or representation with the MSU Defendants], beginning in 1997 and/or 1998.

216.    The MSU Defendants had actual and/or constructive knowledge of Defendant Nassar's propensity for sexually assaulting, battering, molesting, and harassing his  patients and other females [under the guise of medical treatment] [during the course of his employment, agency, and/or representation with the MSU Defendants] and took no action to prevent such conduct.

_____

[20] As of January 5, 2017, using the search term "Nassar" at www.msu.edu returns 402 results, the majority of which include references to Defendant Nassar, dating as far back as 1997.

217.    It was reasonably foreseeable that Defendant Nassar would continue to sexually assault, batter, molest, and harass females [under the guise of medical treatment] [during the course of his employment, agency, and/or representation with the MSU Defendants] with the actual and/or constructive knowledge the MSU Defendants had of such conduct.

218.    As a direct and proximate result of Defendant Nassar's actions carried out in the course of his employment, agency, and/or representation of the MSU Defendants, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

### COUNT VIII
### EXPRESS/IMPLIED AGENCY
### (Against the MSU Defendants)

219.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

220.    An agent is a person who is authorized by another to act on its behalf.

221.    The MSU Defendants intentionally and/or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

43

222.    On the basis of those representations, Plaintiff reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of the MSU Defendants.

223.    Plaintiff was injured as a result of Defendant Nassar's sexual assault, abuse, and molestation, as described above. These acts were performed during the course of Defendant Nassar's employment, agency, and/or representation with the MSU Defendants while he had access to young females.

224.    Plaintiff was injured because she relied on the MSU Defendants to provide employees, agents, and representatives who exercise reasonable skill and care.

225.    As a direct and proximate result of Defendant Nassar's actions carried out in the course of his employment, agency, and/or representations of the MSU Defendants, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

### COUNT IX
### NEGLIGENT SUPERVISION
### (Against MSU Defendants)

226.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

227. The MSU Defendants had a duty to provide reasonable supervision of their employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency, and/or representation with the MSU Defendants and while he interacted with young females, including Plaintiff.

228. Given the known sexual abuse in youth sports and gymnastics, it was reasonably foreseeable that Defendant Nassar, who had prior allegations against him, had and/or would sexually abuse young females, including Plaintiff, unless properly supervised.

229. The MSU Defendants by and through their employees, agents, representatives, managers, and/or assigns, such as Kathie Klages, President Simon, President McPherson, Dean Strampel, or Dr. Kovan, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children.

230. The MSU Defendants breached their duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit acts against Plaintiff.

231. The aforementioned sexual assault, abuse, and molestation occurred while Plaintiff and Defendant Nassar were on the premises of Defendant MSU and while Defendant Nassar was in the course of his employment, agency, and/or representation with the MSU Defendants.

232. The MSU Defendants tolerated, authorized, and/or permitted a custom, policy, practice, or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, resulting in the allowance of Defendant Nassar to violate the rights or persons such as Plaintiff with impunity.

233. The MSU Defendants failed to warn or advise current and former patients of Defendant Nassar, including Plaintiff, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

234. The MSU Defendants failed to offer counseling services to current of former patients of Defendant Nassar, including Plaintiff.

235. As a direct and proximate result of the MSU Defendants' failure to adequately supervise, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

## COUNT X
## NEGLIGENT FAILURE TO WARN OR PROTECT
## (Against the MSU Defendants)

236. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

46

237.   The MSU Defendants knew or should have known that Defendant Nassar posed a risk of harm to Plaintiff and/or others in Plaintiff's situation.

238.   The MSU Defendants knew or should have known that Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

239.   As early as 1997 and/or 1998, the MSU Defendants had direct and/or constructive knowledge of Defendant Nassar's dangerous conduct and failed to respond reasonably and responsibly.

240.   The MSU Defendants had a duty to warn or protect Plaintiff and others in Plaintiff's situation against the risk of injury by Defendant Nassar.

241.   The special, trusting, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar, as an employee, agent, and/or representative of the MSU Defendants, created a duty for the MSU Defendants to disclose information regarding Defendant Nassar's sexual conduct.

242.   The MSU Defendants breached the duty owed to Plaintiff by failing to warn Plaintiff and/or by failing to take reasonable steps to protect Plaintiff from Defendant Nassar.

243.   The MSU Defendants breached the duties to protect owed to Plaintiff by failing to:

   A.   Respond to allegations of sexual assault, abuse, and molestation;

47

B.      Detect and/or uncover evidence of sexual assault, abuse, and molestation; and

C.      Investigate, adjudicate, and terminate Defendant Nassar's employment with Defendant MSU prior to 2014.

244.    The MSU Defendants violated Plaintiff's rights by failing to adequately screen, counsel, and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician at an educational institution, resulting in a violation of Plaintiff's rights.

245.    The MSU Defendants willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiff from Defendant Nassar's conduct.

246.    As a direct and proximate result of the MSU Defendants' failure to warn or protect, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

### COUNT XI
### NEGLIGENT FAILURE TO TRAIN OR EDUCATE
### (Against the MSU Defendants)

247.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

248.     The MSU Defendants had a duty to take reasonable protective measures to protect Plaintiff and others in Plaintiff's situation against the risk of injury by Defendant Nassar.

249.     The MSU Defendants breached the duty owed to Plaintiff to take reasonable protective measures to protect Plaintiff, and other patients of Defendant Nassar, by failing to properly train or educate Plaintiff and other individuals in Plaintiff's situation, about how to avoid a risk of sexual assault and/or sexual abuse by Defendant Nassar.

250.     The MSU Defendants failed to implement reasonable safeguards to:

A.     Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar; and

B.     Avoid placing Defendant Nassar in positions where he would have unsupervised contact and interaction with Plaintiff and other young women.

251.     As a direct and proximate result of the MSU Defendants' failure to train or educate, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

## COUNT XII
## NEGLIGENT RETENTION
## (Against the MSU Defendants)

252. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

253. The MSU Defendants owed a duty to Plaintiff and others in Plaintiff's situation when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents, and/or representative to exercise due care.

254. The MSU Defendants breached the duties owed to Plaintiff by failing to adequately investigate, report, and address complaints about Defendant Nassar's conduct, which the MSU Defendants knew or should have known.

255. The MSU Defendants breached the duties owed to Plaintiff when the MSU Defendants retained Defendant Nassar as an employee, agent, and/or representative after the MSU Defendants discovered or should have reasonably discovered Defendant Nassar's conduct, which reflected a propensity for sexual misconduct.

256. The MSU Defendants' failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually assaulting and/or sexually abusing Plaintiff and an unknown number of other individuals.

257. The aforementioned conduct of the MSU Defendants in credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiff and other minors and young adults.

50

258. As a direct and proximate result of the MSU Defendants' actions in retaining Defendant Nassar, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

**COUNT XIII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against the MSU Defendants)**

259. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

260. The MSU Defendants allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

261. A reasonable person would not expect the MSU Defendants to tolerate or permit an employee, agent, and/or representative to carry out sexual assault, abuse, or molestation after the MSU Defendants knew or should have known of complaints and claims of sexual assault and abuse occurring during Defendant Nassar's "treatments."

262. The MSU Defendants held Defendant Nassar in high esteem and acclaim, which encouraged Plaintiff and others to respect and trust Defendant Nassar and seek out his services without questioning his motives or methods.

263. The MSU Defendants protected Defendant Nassar in part to bolster and

tag: Case 1:17-cv-00254-GJQ-ESC ECF No. 1 filed 03/20/17 PageID.52 Page 52 of 93

sustain his national and international reputation in the gymnastics community.

264. A reasonable person would not expect the MSU Defendants to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from conducting acts of sexual assault, abuse, and molestation.

265. By protecting Defendant Nassar and encouraging the perpetuation of his reputation, the MSU Defendants acted in a way that was beyond all possible bounds of decency in failing to protect Plaintiff and other minors and young adults from Defendant Nassar's conduct.

266. The MSU Defendants' conduct as described above was intentional and/or reckless.

267. The conduct described above constitutes extreme and outrageous conduct.

268. As a direct and proximate result of the MSU Defendants' outrageous conduct, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

**COUNT XIV**
**FRAUD AND MISREPRESENTATION**
**(Against the MSU Defendants)**

269. Plaintiff incorporates by reference the allegations contained in the previous

paragraphs.

270.    From approximately 1996 to September 2016, the MSU Defendants represented to Plaintiff and the public that Defendant Nassar was a competent, safe, and highly regarded physician.

271.    By representing that Defendant Nassar was a team physician and an athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, the MSU Defendants represented to Plaintiff and the public that Defendant Nassar was safe, trustworthy, and of high moral and ethical repute and that Plaintiff and the public need not worry about being harmed by Defendant Nassar.

272.    The aforementioned representations were false when they were made because Defendant Nassar had and was continuing to sexually assault, abuse, and molest an unknown number of patients, including Plaintiff, and other individuals.

273.    The MSU Defendants knew the aforementioned representations regarding Defendant Nassar were false because there had been previous complaints in 1997 and/or 1998, 1999, and 2000 to Defendant MSU employees, agents, and/or representatives about Defendant Nassar's sexual assault, battery, molestation, and harassment.

274.    Although Defendant MSU had been informed of Defendant Nassar's conduct the MSU Defendants failed to investigate, remedy, or in any way address the 1997 and/or 1998, 1999, and 2000 complaints against Defendant Nassar.

275.    The MSU Defendants continued to portray Defendant Nassar as a competent and safe physician.

53

276.    Defendant Nassar was permitted to continue employment and sexually assault, abuse, and molest Plaintiff and an unknown number of other individuals, despite Plaintiff's 2014 complaint against Defendant Nassar to Kristine M. Moore, Assistant Director for Institutional Equity at the MSU Office for Inclusion and Intercultural Initiatives.

277.    The MSU Defendants disregarded Plaintiff's 2014 complaint because of MSU's culture, which included existence of a sexually hostile environment on Defendant MSU's campus and premises and Defendant MSU's failure to address complaints of sexual harassment, including sexual violence, in a prompt and equitable manner, which ultimately perpetuated the hostile environment.[21]

278.    Plaintiff relied on the MSU Defendants' portrayal of Defendant Nassar when she sought his medical treatment for her injury.

279.    Plaintiff and other members of the public relied on the assertions of the MSU Defendants and several other young females continued to seek medical treatment from Defendant Nassar in the wake of known concerns and dangers.

280.    Between the time of Plaintiff's 2014 complaint and 2016, the MSU Defendants continued to portray Defendant Nassar as a safe and competent physician.

281.    The MSU Defendants, by and through their representatives, also affirmatively took steps to attempt to dissuade Plaintiff from speaking with police about her complaints

---

[21] *Letter from U.S. Dep't of Educ. Office for Civil Rights to Michigan State University*, Sept. 1, 2015, OCR Docket #15-11-2098, #15-14-2113, available at: https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf.

against Defendant Nassar.

282.    The MSU Defendants, by and through their representatives, also affirmatively took steps to attempt to dissuade other potential victims of Defendant Nassar from speaking with police or the media by advising the potential victims to respond "No comment" to any requests by media or police.

283.    These actions of MSU Defendants, including the disregard of Plaintiff's complaints, were purportedly done as an attempt to hide the known instances of sexual abuse committed by Defendant Nassar.

284.    As a result of Plaintiff's and the public's reliance on the MSU Defendants' fraudulent misrepresentations regarding Defendant Nassar, Plaintiff and others in Plaintiff's situation were sexually assaulted, abused, and molested by Defendant Nassar during appointments.

285.    As a direct and proximate result of the MSU Defendants' actions and knowingly false representations, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

<u>COUNT XV</u>
<u>GROSS NEGLIGENCE</u>
<u>(Against Defendant USAG and Defendant Nassar)</u>

286.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

287.    A special, confidential, and fiduciary relationship was created between Plaintiff and Defendant Nassar when Plaintiff sought medical treatment from Defendant Nassar, acting in the course of his employment, agency, and/or representation of Defendant USAG, and resulting in Defendant Nassar owing Plaintiff a duty to use due care.

288.    Defendant Nassar owed Plaintiff a duty to use due care in providing medical treatment as an employee, agent, and/or representative of Defendant USAG.

289.    Defendant USAG owed the public and Plaintiff a duty to use due care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with its employees, representatives, and/or agents, including Defendant Nassar.

290.    Defendant USAG knew or should have known of complaints pertaining to Defendant Nassar's nonconsensual sexual touching and assaults that occurred under the guise of medical treatment.

291.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of Defendant USAG under the guise of proper medical treatment was so reckless as to demonstrate a

substantial lack of concern for whether an injury resulted to Plaintiff.

292.    Defendant USAG's failure to adequately supervise Defendant Nassar was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted to Plaintiff.

293.    Defendant USAG's conduct demonstrated a willful disregard for precautions to ensure Plaintiff's safety.

294.    Defendant USAG's conduct demonstrated a willful disregard for substantial risks to Plaintiff.

295.    Defendant USAG breached its duties owed to Plaintiff and were grossly negligent when it conducted itself in the manner described above, including, but not limited to, failing to notify Defendant MSU about the reasons for Defendant Nassar's separation from Defendant USAG in 2015 and, more broadly, the issues surrounding sexual abuse and warning signs and reporting requirements.

296.    These acts by Defendant USAG were committed with reckless disregard to Plaintiff's safety, health, constitutional and/or statutory rights, and with substantial lack of concern to whether an injury resulted to Plaintiff.

297.    As a direct and proximate result of Defendant USAG's and Defendant Nassar's actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily

57

activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

## COUNT XVI
### NEGLIGENCE
### (Against Defendant USAG and Defendant Nassar)

298.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

299.    A special, confidential, and fiduciary relationship was created between Plaintiff and Defendant Nassar when Plaintiff sought medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of Defendant USAG, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care.

300.    Defendant Nassar owed Plaintiff a duty to use ordinary care in providing medical treatment.

301.    Defendant USAG owed the public and Plaintiff a duty to use ordinary care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Nassar.

302.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of Defendant USAG under the guise of proper medical treatment was a breach of the duty to use ordinary care.

303.    Defendant USAG's failure to adequately train and supervise Defendant

Nassar breached the duty of ordinary care.

304.    Defendant USAG's failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

305.    Defendant USAG's failure to inform the public, including individuals Defendant USAG had referred to Defendant Nassar for treatment, of the allegations leading to Defendant Nassar's separation for Defendant USAG was a breach of ordinary care.

306.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs was a breach of the duty to use ordinary care.

307.    As a direct and proximate result of Defendant USAG's and Defendant Nassar's actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

**COUNT XVII**
**VICARIOUS LIABILITY**
**(Against Defendant USAG)**

308.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

309.    Vicarious liability is indirect responsibility imposed by operation of law

59

where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.[22]

310.    Vicarious liability essentially creates agency between the principal and its agent so that the principal is held to have done what the agent has done.

311.    Defendant USAG's website contains sites portraying Defendant Nassar as the recipient of distinguished awards and boasts him as having been "instrumental" to the success of USA gymnastics.

312.    Defendant USAG employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1986 to 2015.

313.    Defendant USAG is vicariously liable for the actions of Defendant Nassar, as described above, that were performed during the course of his employment, representation, and/or agency with Defendant USAG.

314.    Defendant USAG had actual and/or constructive knowledge of Defendant Nassar sexually assaulting, battering, molesting, and harassing young females on several occasions [under the guise of medical treatment] [during the course of his employment, agency, and/or representation with Defendant USAG] , beginning in 1997 and/or 1998.

315.    Defendant USAG had actual and/or constructive knowledge of Defendant Nassar's propensity for sexually assaulting, battering, molesting, and harassing his patients and other females [under the guise of medical treatment] [during the course of his

---

[22] *See generally Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 233   (6th Cir. 2009).

employment, agency, and/or representation with Defendant USAG] and took no action to prevent such conduct.

316. It was reasonably foreseeable that Defendant Nassar would continue to sexually assault, batter, molest, and harass females [under the guise of medical treatment] [during the course of his employment, agency, and/or representation with Defendant USAG] with the actual and/or constructive knowledge Defendant USAG had of such conduct.

317. As a direct and proximate result of Defendant USAG's actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

## COUNT XVIII
### EXPRESS/IMPLIED AGENCY
### (Against Defendant USAG)

318. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

319. An agent is a person who is authorized by another to act on its behalf.

320. Defendant USAG intentionally and/or negligently made representations that Defendant Nassar was its employee, agent, and/or representative.

321.   On the basis of those representations, Plaintiff reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of Defendant USAG.

322.   Upon information and belief, Defendant USAG referred significant numbers of gymnasts to Defendant Nassar for medical treatment at his office on Defendant MSU's campus.

323.   Plaintiff was injured as a result of Defendant Nassar's sexual assault, abuse, and molestation, as described above. These acts were performed during the course of Defendant Nassar's employment, agency, and/or representation with Defendant USAG.

324.   Plaintiff was injured because she relied on Defendant USAG to provide employees, agents, and representatives who exercise reasonable skill and care.

325.   As a direct and proximate result of Defendant Nassar's actions carried out in the course of his employment, agency, and/or representation of Defendant USAG, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

## COUNT XIX
### NEGLIGENT SUPERVISION
### (Against Defendant USAG)

326.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

327.    Defendant USAG had a duty to provide reasonable supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency, and/or representation with Defendant USAG and while he interacted with young female athletes and Plaintiff.

328.    Given the known sexual abuse in youth sports and gymnastics, it was reasonably foreseeable that Defendant Nassar, who had prior allegations against him, would sexually abuse his patients, including Plaintiff, unless properly supervised.

329.    Defendant USAG by and through its employees, agents, managers, and/or assigns, such as Mr. Penny and Mr. Colarassi, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults.

330.    Defendant USAG breached its duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to sexually assault, abuse, molest, and harass Plaintiff.

331.    The aforementioned sexual assault, abuse, molestation, and harassment occurred while Defendant Nassar was in the course of his employment, agency, and/or representation with Defendant USAG.

332.    Defendant USAG tolerated, authorized, and/or permitted a custom, policy, practice, or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, resulting in the allowance of Defendant Nassar to violate the rights of persons such as Plaintiff with impunity.

333.    As a direct and proximate result of the Defendant USAG's failure to adequately supervise, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

### COUNT XX
### NEGLIGENT FAILURE TO WARN OR PROTECT
### (Against Defendant USAG)

334.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

335.    Given the direct or indirect knowledge of sexual abuse in youth sports, and in particular gymnastics, it was reasonably foreseeable that sexual abuse of young females may occur if proper procedures were not put in place by Defendant USAG.

336.    Defendant USAG knew or should have known that Defendant Nassar posed a risk of harm to Plaintiff and/or others in Plaintiff's situation.

337.    Defendant USAG knew or should have known that Defendant Nassar

64

committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

338.    Defendant USAG had actual and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

339.    Defendant USAG had a duty to warn or protect the public, Plaintiff, and others in Plaintiff's situation against the risk of injury by Defendant Nassar.

340.    The special, trusting, confidential, and fiduciary relationship between Defendant Nassar, in his capacity as an employee, agent, and/or representative of Defendant USAG, and Plaintiff created a duty to disclose this information.

341.    Defendant USAG breached the duty owed to Plaintiff by failing to warn the public and Plaintiff and/or by failing to take reasonable steps to protect the public and Plaintiff from Defendant Nassar.

342.    Defendant USAG breached its duties to protect Plaintiff by failing to detect and/or uncover evidence of sexual assault, abuse, molestation, and harassment.

343.    Defendant USAG breached its duty to protect Plaintiff by failing to investigate, adjudicate, suspend, and/or ban Defendant Nassar from USAG affiliation.

344.    Defendant failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician in his capacity as an employee, agent, and/or representative of Defendant USAG, resulting in violations of Plaintiff's

65

rights.

345.     Defendant USAG willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiff from Defendant Nassar's conduct.

346.     Defendant USAG willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiff from Defendant Nassar's conduct.

347.     As a direct and proximate result of the Defendant USAG's failure to warn or protect, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

COUNT XXI
NEGLIGENT FAILURE TO TRAIN OR EDUCATE
(Against Defendant USAG)

348.     Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

349.     Defendant USAG had a duty to protect the public and Plaintiff and others in Plaintiff's situation against the risk of injury by Defendant Nassar.

350.     Defendant USAG breached the duty owed to the public and Plaintiff to take reasonable protective measures to protect Plaintiff, and others in Plaintiff's situation, by failing to properly train or educate Plaintiff, and other individuals in Plaintiff's situation,

66

about how to avoid a risk of sexual assault and/or sexual abuse, including sexual assault and/or sexual abuse by Defendant Nassar.

    351.   Defendant USAG failed to implement reasonable safeguards to:

        A.    Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar; and

        B.    Avoid placing Defendant Nassar in positions where he would have unsupervised contact and interaction with Plaintiff and other young athletes.

    352.   As a direct and proximate result of the Defendant USAG's failure to train or educate, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

### COUNT XXII
### NEGLIGENT RETENTION
### (Against Defendant USAG)

    353.   Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

    354.   Defendant USAG had a duty owed to Plaintiff and others in Plaintiff's situation when credentialing, hiring, retaining, screening, checking, regulating, monitoring,

and supervising employees, agents, and/or representative to exercise due care.

355.     Defendant USAG breached the duties owed to Plaintiff by failing to adequately investigate, report, and address complaints about Defendant Nassar's conduct, which Defendant USAG knew or should have known.

356.     Defendant USAG breached the duties owed to Plaintiff when Defendant USAG retained Defendant Nassar as an employee, agent, and/or representative after Defendant USAG discovered or should have reasonably discovered Defendant Nassar's conduct, which reflected a propensity for sexual misconduct.

357.     Defendant USAG's failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually assaulting and/or sexually abusing Plaintiff and an unknown number of other individuals.

358.     The aforementioned conduct of Defendant USAG in credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiff and other minors and young adults.

359.     Defendant USAG's retention of Defendant Nassar resulted in Plaintiff relying on such credentials as she sought medical treatment.

360.     As a direct and proximate result of the Defendant USAG's actions in retaining Defendant Nassar, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and

obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

## COUNT XXIII
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendant USAG)

361.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

362.    Defendant USAG allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

363.    Defendant USAG held Defendant Nassar in high esteem and acclaim, which encouraged Plaintiff and others to respect and trust Defendant Nassar and seek out his services without questioning his motives or methods.

364.    Defendant USAG protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community.

365.    A reasonable person would not expect Defendant USAG to tolerate or permit an employee, agent, and/or representative to carry out sexual assault, battery, molestation, or harassment after the USAG Defendants knew or should have known of complaints of such sexual assault, battery, molestation, and harassment occurring during Defendant Nassar's treatments.

366.    A reasonable person would not expect Defendant USAG to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from conducting acts of sexual assault, abuse, molestation, and harassment.

367.     By protecting Defendant Nassar and encouraging the perpetuation of his reputation, Defendant USAG acted in a way that was beyond all possible bounds of decency in failing to protect Plaintiff and others from Defendant Nassar's conduct.

368.     Defendant USAG's conduct as described above was intentional and/or reckless.

369.     As a direct and proximate result of the Defendant USAG's outrageous conduct, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

**COUNT XXIV**
**FRAUD AND MISREPRESENTATION**
**(Against Defendant USAG)**

370.     Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

371.     From approximately 1996 to summer 2015, Defendant USAG represented to Plaintiff and the public that Defendant Nassar was a competent, safe, and highly regarded physician.

372.     By representing that Defendant Nassar was a team physician and an athletic physician at Defendant MSU and a National Team Physician with Defendant USAG,

Defendant USAG represented to Plaintiff and the public that Defendant Nassar was safe, trustworthy, and of high moral and ethical repute and that Plaintiff and the public need not worry about being harmed by Defendant Nassar.

373.    The aforementioned representations were false when they were made because Defendant Nassar had and was continuing to sexually assault, batter, molest, and harass unknown number of his patients and other individuals.

374.    Additionally, complaints were made to Defendant USAG, yet Defendant USAG did not contact Plaintiff, the MSU Defendants, other individuals it had referred to Defendant Nassar, or any other clubs or organizations affiliated with Defendant Nassar to inform them of the allegations and potential harm to Plaintiff and others.

375.    Defendant USAG continued to portray Defendant Nassar as a competent and safe physician, intentionally inducing Plaintiff and the public to rely on the reputation of Defendant Nassar that Defendant USAG was perpetuating.

376.    Plaintiff relied on the assertions of Defendant USAG and sought medical treatment from Defendant Nassar while Defendant USAG knew of concerns and dangers.

377.    As a result of Plaintiff's and the public's reliance on Defendant USAG's fraudulent misrepresentation regarding Defendant Nassar, Plaintiff and others in Plaintiff's situations were sexually assaulted, abused, molested, and harassed by Defendant Nassar.

378.    Plaintiff was subjected to sexual assault, abuse, molestation, and harassment as a result of Defendant USAG's fraudulent misrepresentations regarding Defendant Nassar.

71

379.    As a direct and proximate result of the Defendant USAG's actions and knowingly false representations, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

COUNT XXIV
NEGLIGENCE
**(Against Defendant Twistars and Defendant Nassar)**

380.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

381.    In or around 1998, a parent of a gymnast at Defendant Twistars' facility complained to Mr. Geddert, the owner and operator of Defendant Twistars, regarding Dr. Nassar's conduct alleging sexual abuse, assault, and molestation.

382.    Despite being informed of Defendant Nassar's conduct, Mr. Geddert recommended Defendant Nassar as a physician to members and guests of Defendant Twistars.

383.    Mr. Geddert owed the public and Plaintiff a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation.

384.    In recommending Defendant Nassar with knowledge of Defendant Nassar's conduct, Mr. Geddert breached the duty of ordinary care to Plaintiff and the public.

72

385. Defendant Twistars breached the duty of ordinary care to Plaintiff and the public in failing to investigate the 1998 allegations, which were made to Mr. Geddert.

386. Defendant Twistars breached the duty of ordinary care to Plaintiff and the public by failing to report the 1998 allegations, which were made to Mr. Geddert, to law enforcement.

387. By seeking medical treatment from Defendant Nassar, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care.

388. Defendant Nassar owed Plaintiff a duty of ordinary care in carrying out medical treatment.

389. Defendant Twistars' failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

390. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of and under the guise of rendering medical "treatment" was a breach of the duty to use ordinary care.

391. As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of

earning and loss of earning capacity.

**COUNT XXV**
**GROSS NEGLIGENCE**
**(Against Defendant Twistars and Defendant Nassar)**

392.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

393.    Defendant Twistars owed the public and Plaintiff a duty to use due care to ensure safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents.

394.    Defendant Nassar owed the public and Plaintiff a duty to use due care as an employee, representative, and/or agent of Defendant Twistars.

395.    By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant Twistars, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use due care.

396.    Defendant Twistars knew or should have known of complaints pertaining to Defendant Nassar's nonconsensual sexual touching and assaults that occurred under the guise of medical treatment.

397.    Given known sexual abuse which has taken place in youth sports including gymnastics and the reasonable foreseeability that harm may occur to athletes, Defendant Twistars not only referred athletes to Defendant Nassar but also failed to adequately supervise Defendant Nassar. Defendant Twistars' action were so reckless as to demonstrate

74

a substantial lack of concern for whether an injury would result to Plaintiff.

398.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of Defendant Twistars and under the guise of rendering medical "treatment" as an employee, representative, and/or agent of Defendant Twistars was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

399.    Defendant Twistars' conduct demonstrated a willful disregard for precautions to ensure Plaintiff's safety.

400.    Defendant Twistars' conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiff.

401.    Defendant Twistars breached duties owed to Plaintiff and were grossly negligent when they conducted themselves by actions described above, said acts having been committed with reckless disregard for Plaintiff's health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

402.    As a direct and/or proximate result of Defendant Twistars' actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of

earning and loss of earning capacity.

## COUNT XXVI
### EXPRESS/IMPLIED AGENCY
### (Against Defendant Twistars)

403.  Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

404.  An agent is a person who is authorized by another to act on its behalf.

405.  Defendant Twistars intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

406.  On the basis of those representations, Plaintiff reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of Defendant Twistars.

407.  Upon information and belief, Defendant Twistars referred significant numbers of gymnasts to Defendant Nassar for medical treatment at his office on Defendant MSU's campus.

408.  Plaintiff was injured as a result of Defendant Nassar's sexual assault, abuse, molestation, and harssement as described above.

409.  Plaintiff was injured because she relied on Defendant Twistars to provide employees, agents, and/or representatives who would exercise reasonable skill or care.

410.  As a proximate cause of Defendant Nassar's negligence carried out through his employment, agency, and or representation of Defendant Twistars Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress,

physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

**COUNT XXVII**
**NEGLIGENT SUPERVISION**
**(Against Defendant Twistars)**

411.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

412.    Defendant Twistars had a duty to provide reasonable supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency, or representation of Defendant Twistars when he interacted with young female patients including Plaintiff.

413.    It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children and Plaintiff, unless properly supervised.

414.    Defendant Twistars by and through their employees, agents, managers, and/or assigns, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults and due to the 1998 complaint made to Mr. Geddert of the nonconsensual sexual touching during "treatment."

415.    Defendant Twistars breached its duty to provide reasonable supervision of

77

Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiff.

416.    The aforementioned sexual abuse occurred while Defendant Nassar was acting in the course of his employment, agency, or representation of Defendant Twistars.

417.    Defendant Twistars tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiff with impunity.

418.    As a direct and/or proximate result of Defendant Twistars' negligent supervision, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

## COUNT XXVIII
### NEGLIGENT FAILURE TO WARN OR PROTECT
### (Against Defendant Twistars)

419.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

420.    Defendant Twistars knew or should have known that Defendant Nassar posed a risk of harm to Plaintiff or those in Plaintiff's situation.

421.     As early as 1998, Defendant Twistars, by a complaint made to its owner, employee, agent, and/or representative John Geddert, had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

422.     Defendant Twistars knew or should have known that Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

423.     Defendant Twistars had a duty to warn or protect Plaintiff and others in Plaintiff's situation against the risk of injury by Defendant Nassar.

424.     The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar, an employee, agent, and/or representative of Defendant Twistars and Plaintiff.

425.     Defendant Twistars breached said duty by failing to warn Plaintiff and/or by failing to take reasonable steps to protect the Plaintiff from Defendant Nassar.

426.     Defendant Twistars breached its duties to protect Plaintiff by failing to detect and/or uncover evidence of sexual abuse and sexual assault, which was taking place on its premises and at its facility.

427.     Defendant Twistars breached its duties to protect Plaintiff by failing to investigate Defendant Nassar, and adjudicate and suspend and/or ban Defendant Nassar from Twistars sanctioned events.

428.     Defendant Twistars failed to adequately screen, counsel, and/or discipline

Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician with their organization, resulting in violations of Plaintiff.

429. Defendant Twistars willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiff from Defendant Nassar's conduct.

430. As a direct and/or proximate result of Defendant Twistars' negligent failure to warn or protect, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

## COUNT XXIX
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendant Twistars)

431. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

432. Defendant Twistars allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults at its facility and other places.

433. A reasonable person would not expect Defendant Twistars to tolerate or permit their employee, agent, or representative to carry out sexual assault, abuse, or

molestation.

434. Defendant Twistars held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiff and others to respect and trust Defendant Nassar, seek his services, and to not question his methods or motives.

435. Defendant Twistars protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community, and Twistars' reputation in the gymnastics community.

436. A reasonable person would not expect Defendant Twistars to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse, and molestation on their premises and elsewhere.

437. A reasonable person would not expect Defendant Twistars to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from conduction acts of sexual assault, battery, molestation, and harassment.

438. By protecting Defendant Nassar and encouraging the perpetuation of his reputation, Defendant Twistars acted in a way that was beyond all possible bounds of decency in failing to protect Plainitff and others from Defendant Nassar's conduct.

439. Defendant Twistars' conduct as described above was intentional and/or reckless.

440. As a result of Defendant Twistars' conduct, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace,

fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

## COUNT XXX
### FRAUD AND MISREPRESENTATION
### (Against Defendant Twistars)

441.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

442.    From approximately 1996 to September 2016, Defendant Twistars represented to the public and Plaintiff that Defendant Nassar was a competent, ethical, and safe physician.

443.    By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant Twistars represented to the public and Plaintiff that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiff and the public need not worry about being harmed by Defendant Nassar.

444.    The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest an unknown number of individuals, at times at Defendant Twistars' facility.

445.    As early as 1998, Defendant Twistars knew their representations of Defendant Nassar were false as Defendant Twistars received a complaint of Defendant Nassar's conduct.

446.    Between the time of the 1998 complaint and September 2016, Defendant Twistars continued to hold Defendant Nassar out as a competent and safe physician.

447.    Plaintiff relied on the assertions of Defendant Twistars that Defendant Nassar was a safe, confident, trustworthy physician.

448.    Plaintiff was subjected to sexual assault, abuse, and molestation as a result of Defendant Twistars' fraudulent misrepresentations regarding Defendant Nassar.

449.    As a direct and/or proximate result of Defendant Twistars' fraudulent misrepresentations, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

**COUNT XXXI**
**ASSAULT AND BATTERY**
**(Against Defendant Lawrence Nassar)**

450.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

451.    Defendant Nassar "cupped [Plaintiff's] butt" over her sweatpants.

452.    Defendant Nassar intentionally sent the resident who was helping him with Plaintiff's appointment out of the room, making Plaintiff feel very uncomfortable and put her in imminent fear and apprehension the sexual touching described herein would

continue as Defendant Nassar had the present ability to subject Plaintiff to immediate, intentional, harmful, and offensive touching.

453. Defendant Nassar intentionally massaged Plaintiff's breast under the guise of treating Plaintiff's shoulder. These acts continued even after Plaintiff attempted to get Defendant Nassar to stop his actions three to four times.

454. Under the guise of massaging Plaintiff's hip, Defendant Nassar proceeded to massage Plaintiff's buttocks under her sweatpants and underwear, resulting in skin-to-skin contact.

455. Defendant Nassar used three ungloved fingers to massage Plaintiff's vagina and vaginal area. This conduct continued even after Plaintiff told Defendant Nassar "stop, you're hurting me."

456. Defendant Nassar put Plaintiff in further imminent fear and apprehension of hurtful and offensive touching by not giving notice or explanations for the actions he called treatment.

457. The aforementioned actions, including sexual conduct, by Defendant Nassar described herein were performed without Plaintiff's consent.

458. The aforementioned actions by Defendant Nassar herein resulted in harmful or offensive contact with the body of Plaintiff.

459. As a direct and proximate result of Defendant Nassar's nonconsensual harmful and offensive touching, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional

distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

**COUNT XXXII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against Defendant Lawrence Nassar)**

460.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

461.    Defendant Nassar used his authority and position with MSU Defendants and Defendant USAG to sexually assault, batter, molest, and harass Plaintiff and an unknown number of other individuals.

462.    Defendant Nassar exhibited extreme and outrageous behavior by committing sexual assault, abuse, and molestation under the guise of medical treatment.

463.    A reasonable person would not expect to be sexually assaulted, abused, or molested when seeking medical treatment from a physician.

464.    Defendant Nassar exhibited extreme and outrageous behavior when touching patients without proper notice or explanation and without giving the patient the opportunity to refuse the touching.

465.    A reasonable person would not expect their physician to sexually assault, abuse, or molest them, and to do so under the guise of medical "treatment" without proper notice or explanation and without giving the patient the opportunity to refuse "treatment"

85

of that nature.

466.    Defendant Nassar's conduct was intentional and/or reckless as he sexually assaulted, abused, molested, and harassed young women and children for approximately two decades, from approximately 1997 and/or 1998 to 2016.

467.    Defendant Nassar's conduct was intentional and/or reckless as he sexually assaulted, abused, molested, and harassed Plaintiff.

468.    Defendant Nassar caused Plaintiff severe emotional and psychological distress when he sexually assaulted, abused, molested, and harassed her.

469.    Defendant Nassar caused Plaintiff severe emotional and psychological distress when he refused to stop his nonconsensual actions following Plaintiff's request for him to stop.

470.    Defendant Nassar caused Plaintiff severe emotional and psychlogoical distress when he made inappropriate comments towards Plaintiff, including:

> A.    Refusing to accept Plaintiff was not going to make another appointment when she rejected his first five proposed dates and only conceding when Plaintiff agreed to a date for her next appointment;
>
> B.    Telling Plaintiff that her boyfriend should give her better massages; and
>
> C.    Telling Plaintiff that it did not matter if she was on her period during her next appointment because he would work around that.

471.    Defendant Nassar's conduct caused and continues to cause Plaintiff to suffer

emotional and psychological distress.

472.    As a direct and proximate result of Defendant Nassar's nonconsensual harmful and offensive touching, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

## COUNT XXXIII
### INVASION OF PRIVACY - INTRUSION
### (Against Defendant Nassar)

473.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

474.    Defendant Nassar intruded upon Plaintiff's seclusion or solitude by sexually assaulting, abusing, and molesting Plaintiff without the consent of Plaintiff or Plaintiff's parents.

475.    Plaintiff's genital area, breasts, and sexual activity are secret and private subject matters.

476.    Plaintiff possessed a right to keep these subject matters private.

477.    Defendant Nassar's method of sexually assaulting, abusing, and molesting Plaintiff is objectionable to a reasonable person.

478.    As a direct and proximate result of Defendant Nassar's invasion of Plaintiff's

87

privacy, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

### DAMAGES - FOR ALL AFOREMENTIONED CAUSES OF ACTION

479. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

480. As a direct and/or proximate result of Defendants' actions and/or inactions stated above, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.[23]

481. The conduct, actions and/or inactions of Defendants as alleged in the above stated counts and causes of action constitute violations of Plaintiff's Constitutional and

---

[23] In the email correspondence between William Strampel and Defendant Nassar, Mr. Strampel expressly acknowledged that Plaintiff's appointment with Defendant Nassar caused her emotional distress, stating "[t]he procedure which caused the patient emotional distress because of her interpretation will be modified in the future. . ." (*See* **Exhibit 1**.)

Federal rights as well as the common and/or statutory laws of the State of Michigan, and the United States District Court has jurisdiction to hear and adjudicate said claims.

482. In whole or in part, as a result of some or all of the above actions and/or inactions of Defendants, Plaintiff has and continues to suffer irreparable harm as a result of the violations.

483. The amount in controversy exceeds the jurisdictional minimum of $75,000.00.

**WHEREFORE**, Plaintiff requests this Court and the finder of fact to enter a Judgment in Plaintiff's favor against all named Defendants on all counts and claims as indicated above in an amount consistent with the proofs of trial, and seeks against Defendants all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and hereby requests that the trier of fact, be it judge or jury, award Plaintiff all applicable damages, including but not limited to compensatory, special, exemplary, and/or punitive damages, in whatever amount the Plaintiff is entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

a)   Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to medical expenses, loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, violation of Plaintiff's Constitutional, Federal, and State rights, loss of social pleasure and enjoyment, and other damages to be proved;

b)   Punitive and/or exemplary damages in an amount to be determined as

reasonable or just by the trier of fact;

c)      Reasonable attorney fees, interest, and costs; and

d)      Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability to ensure the safety and protection of young athletes and other individuals, as appears to be reasonable and just.


Respectfully submitted:


**SINAS, DRAMIS, BRAKE,
BOUGHTON & McINTYRE, P.C.**

Attorneys for Plaintiff

    /s/James F. Graves
James F. Graves (P14288)
3380 Pine Tree Road
Lansing, Michigan  48911
Phone: (517) 394-7500
Fax: (517) 394-7510
DATED:      March 20, 2017      Email: jimgraves@sinasdramis.com

## DEMAND FOR JURY TRIAL

**NOW COMES** Plaintiff, Jane AAA Doe, by and through her attorneys, Sinas, Dramis, Brake, Boughton & McIntyre, P.C.,and hereby demands a trial by jury of the above-entitled cause.

**SINAS, DRAMIS, BRAKE,
BOUGHTON & McINTYRE, P.C.**

Attorneys for Plaintiff

_____/s/ James F. Graves_____
James F. Graves (P14288)
3380 Pine Tree Road
Lansing, MI 48911
Phone: (517) 394-7500
Fax: (517) 394-7510
DATED:       March 20, 2017       Email: jimgraves@sinasdramis.com

# EXHIBIT 1

**From:** William Strampel
**Sent:** Wednesday, July 30, 2014 9:29 AM
**To:** Larry Nassar
**Subject:** RE: My situation

Larry,

Thanks and as per our conversation yesterday I am glad we have agreed to the following:

1)  We will have another person, (resident, nurse, etc) in the room whenever we are approaching a patient to preform procedures of anything close to a sensitive area.
2)  The procedure which caused the patient emotional distress because of her interpretation will be modified in the future to be sure that there is little to no skin to skin contact when in these regions. Should this be absolutely necessary, the procedure will be explained in detail with another person in the room for both the explanation and the procedure.
3)  New people in our practice will be oriented to be sure they understand these requirements.

I am happy this has resolved to some extend and I am happy to have you back in full practice.

Bill